# The Hagerstown Bank *versus* The Adams Express Company.

*Owner of destroyed bank notes may recover from the bank.—Payment by carrier for goods lost in* transitu, *transfers property to carrier.—Proof of destruction a question of fact for the jury.*

1. The owner of bank notes which have been destroyed, may recover the amount from the bank which issued them, on proof of their destruction.

2. Where notes, issued by a bank, had been sent to it, through an express company, and while in transit a part were stolen by an agent, who destroyed them after the amount had been paid to the bank by the company, *held*, that the property in the notes was transferred by that payment to the company, who, on proving the destruction, were entitled to recover the amount from the bank.

3. The quantity and character of the evidence relating to the destruction of the notes is for the jury: and where it was such as to justify the submission of the question to them, their finding was held conclusive.

[Hagerstown Bank *v.* Adams Express Co.]

ERROR to the Common Pleas of *Dauphin county.*

This was an action of trespass on the case brought by The Adams Express Company against The Hagerstown Bank, to recover $3315 of the notes of the bank, which the plaintiff averred were the property of the Express Company, and which had been cancelled or destroyed, whereby the bank was relieved from all liability to redeem them.

The facts of this case, as disclosed by the testimony, were as follows :—

On the 6th day of October 1860, a package containing $9455 of Hagerstown bank notes was made up at the Merchants' Bank of Baltimore, and received by Adams Express Company, to be delivered to the Hagerstown Bank. When it was opened on the 8th of October by the bank at Hagerstown, it contained but $6095—$3360 having been abstracted from the package, and a bundle, made up of newspapers cut to the proper size, substituted. The company was informed of the loss, and Mr. Bingham, the superintendent, on the 11th of October went to Hagerstown and gave his check to the cashier for the amount of the loss. When the check was given, the cashier of the bank gave Mr. Bingham his receipt for the $3360. The efforts of the company were then earnestly directed to ascertain by whom the money had been taken. Circumstances indicated a young man named Oliver B. Simmons, who was subject to occasional attacks of insanity, and who was then temporarily employed by the company, as the person who had taken the money. He was privately questioned as to his knowledge of the loss, and upon being assured that he would not be prosecuted if he told the truth about the matter, he confessed that he had taken the money from the package, at the express office in Harrisburg on the 8th of October, about one o'clock in the morning, that he took it home to his father's house, and put it in a box, where it remained until October 13th, when he took it, except $45, to Wetzel's Swamp, about two miles from Harrisburg, and burned it there. The amount of the sum burned was therefore, according to the confession, $3315. After this confession, Simmons, accompanied by four gentlemen, went to the place where he said he had destroyed the notes. A quantity of cinders and ashes were found, showing the character of the paper burned. There were also found a number of pieces of Hagerstown Bank notes, which were produced and identified at the trial. From the evidence on the trial it was shown that young Simmons, at the time he broke the package and took the notes, was in " one of his spells," or fits of insanity, and it was also proved that after these attacks he had always a clear and distinct recollection of all that took place whilst his mind was under their influence.

[Hagerstown Bank *v.* Adams Express Co.]

On the 1st of April 1861, after tendering to the bank a bond of indemnity, this suit was brought as above stated.

There was only one error assigned as to the admission of evidence, which was to the deposition of Oliver B. Simmons, because of his interest in the question, the want of authority for the execution of the release, which was offered for the purpose of restoring his competency, and the inducements held out to him by the promise not to prosecute if he would make a full confession.

The court below (PEARSON, P. J.), after stating the facts of the case, charged the jury as follows :—

" The express company was liable for the loss, and on the 11th day of October 1860 paid it in full, and obtained a receipt. The notes by this payment became the property of the express company. The notes in the present case being all of the kind ordinarily issued by banks, are payable on demand, and a demand must be proved, by showing that they were presented at the place of redemption, or the want thereof accounted for. The excuse for non-presentation is, that the notes were destroyed. On the truth of that allegation this case turns.

" The time was, in England, that if a man lost the seal from his bond, it was rendered invalid, and he lost his debt. Afterwards this was amended by judicial decision. Still a profert of the instrument was considered indispensable, until in process of time this was dispensed with where the party averred, and was prepared to prove that it was lost, or destroyed. It is now clearly settled, in regard to instruments not negotiable, that proof of loss will dispense with production; and even in the case of negotiable paper the party would be permitted to recover in case of its destruction, or on proving it lost, and tendering a sufficient indemnity. I do not consider that there could be a recovery on *lost* bank notes, as they are designed to pass from hand to hand as cash, and the bank is bound to pay them on presentation to whoever holds them at the time. It may be possible that if the denomination, date, letter, and number could be described, the loser might recover on tendering an indemnity, but it would certainly require a full and accurate description. Where they are wholly *destroyed*, so that they never can be presented or claimed from the bank by any one, the law is otherwise. The holder is not to lose and the bank to gain the whole amount of the notes when their total destruction is clearly established—when it is made indubitably to appear that they are entirely consumed by fire, or irretrievably sunk in the depths of the ocean.

[" It is said, however, that there can be no recovery here for want of proof by the destroyer of the exact amount of notes consumed. The exact amount must be satisfactorily established; but it need not be done by counting, if it can be otherwise certainly reached. It is very probable, nay, almost certain, that

Simmons did not count those notes at the time of burning; but there is proof of the exact amount sent from Baltimore, and of the sum received at Hagerstown; the difference was abstracted. It is also proved that Simmons passed or held in all $45, and he testified that all the remainder were burned. That fact depends on the truth of his testimony. If only *part* were destroyed, there can be no recovery, as the subject would be left in total uncertainty. You might doubt whether he had burned the half, the third, or two-thirds. You must be convinced that *all were entirely destroyed*, so that they never can circulate, or be presented to the bank.]

"As this case mainly depends on the evidence of Simmons, you must examine it with great care, and it is certainly subject to deep distrust, unless strongly corroborated.

"By his own confession, he was either a felon or a madman. In the former case, you would distrust him on account of moral obliquity; and in the latter, from want of memory, perverted judgment, or the imagining of matters which never existed, as is often the case with the insane, and one of the evidences of this malady. You will, on the other hand, bear in mind the statement of Doctor Curwin and his father, as to his memory during former attacks of the malady, and the corroborating facts proved by Mr. Wier and General Williams. The evidence of a felon, or an avowed accomplice, is sufficient in law to convict of the highest crime when substantially corroborated, and consequently should have some weight in civil proceedings. To pass on the credibility of witnesses is one of the most important functions of a jury; and it is peculiarly their province. The credibility of this witness, and the correctness of his statement, are submitted to your careful consideration.

"The defendant contends that this action cannot be sustained because the money was voluntarily paid by the express company in compromise of a claim for damages, and cannot be recovered back. Where money is thus paid without suit, under a mistake of facts, it may very frequently be recovered back on the discovery of the mistake; but never where it is recovered by law. If a man should be called on for a debt, and had either forgotten its previous payment or mislaid his receipt, on its subsequent discovery he might recover it back as money paid by mistake. The debt had been twice paid, and the other party could not hold it with a good conscience. If a recovery had been had at law, the money never could be recovered back without first getting clear of the judgment. In this case suppose the express company, after making payment, should have discovered that the money never had been delivered to it at Baltimore, but still remained in bank there for the use of the defendant, there cannot be a doubt of its right to recover, although paid to compromise

a claim for damages arising out of its non-delivery. [Had the destruction of this money been known before the company paid the bank, we cannot doubt of its right to resist payment. This case does not, however, turn precisely on those principles. The express company having paid the bank for this loss, becomes the owner of the money, and had it been subsequently found, could have presented the notes for payment like any other bearer, or used them for circulation in its business. It now sues as owner of the notes, and claims to excuse itself from presentation and demand by proving the destruction of the paper, and its consequent inability to present them. This we hold is a valid excuse ; and if the notes are *clearly* and *undoubtedly* proved to have been destroyed whilst owned by the express company, it can recover. It has been suggested that if these notes were destroyed, it was through the instrumentality of the plaintiff's own agent, and should therefore be considered its voluntary act. A party cannot be visited with loss through the insanity of its servant, nor its rights destroyed through his felony. If one of two innocent persons must suffer through such an act, he must bear the loss who was so unfortunate as to employ the madman or felon. But in cases of that kind the employer cannot be treated as a *voluntary spoiler.*]

" A bond of indemnity, conceded to be sufficient in amount, was tendered before suit brought, and a demand was made. This bond is proper, but probably could only avail the defendant in case of evidence being discovered hereafter, showing that the notes, or at least some of them, were not destroyed. There is scarcely a possibility of the bank ever being able to avail itself of the bond through the mere presentation of its paper, as it is conceded the number, date, and denomination of the respective notes are unknown. But should it come out that a portion had gone into circulation, it might be useful for it to hold an indemnity. Such facts are sometimes brought to light by testimony at an after day. I should be unwilling to permit a plaintiff to recover without tendering a satisfactory indemnity.

" Should you find for the plaintiff, the next inquiry is, what amount can it recover ? The plaintiff demands interest from the time of payment. This, we think, is inadmissible. Until the destruction of the notes was clearly established, there could be no pretence to recover their value. It is true they were demanded before suit brought, but that is not sufficient. The bank was justifiable in withholding payment until it was proved that they were destroyed; and, under the circumstances, it would properly discredit the averment. The bank had also an interest in the paper for future circulation to the amount that it would cost to supply the place of the notes, and as it has had the benefit of

[Hagerstown Bank *v.* Adams Express Co.]

the plaintiff's money for several years, the one may be set against the other."

On the points presented by the defendant's counsel the learned judge charged as follows :—

"1. The plaintiffs in this case having undertaken as common carriers for hire to carry for and deliver to the defendants at Hagerstown a package of bank notes, amounting to the sum of nine thousand four hundred and fifty-five dollars, and having delivered to the defendants but six thousand and ninety-five dollars thereof, the plaintiffs had thereby violated their contract, and the defendants had a good and undoubted cause of action against the present plaintiffs, upon which the present defendants would have been entitled to recover damages for such breach of contract.

" Answer.—This point is correct.

" 2. The plaintiffs being thus liable to respond to the defendants in damages, and having settled and adjusted such liability to respond to the bank by the payment of a certain sum of money by the plaintiffs to the bank, the plaintiffs are not entitled to recover back any part of the money thus paid, on the ground that they voluntarily paid in settlement of the bank's right to recover damages, a larger sum of money than the bank could or would probably have recovered, if suit had been instituted by the court.

" Answer.—The express company having paid the money voluntarily, and without suit, and the money being accepted by the bank without suit, if it is afterwards discovered that the money was paid by mistake, it can be recovered back in an action of *assumpsit*.

" 3. That this cannot be regarded as belonging to that class of cases denominated, in legal *parlance,* ' money paid by mistake,' because, at the time the money was paid by the plaintiffs, the bank had a good and undoubted cause of action against the plaintiffs, in which the plaintiffs were liable to respond in damages to the party to whom the money now sought to be recovered back was voluntarily paid, by way of settlement and adjustment of such cause of action, but may be legally regarded as a case in which a party, liable to respond in *unliquidated damages,* voluntarily pays more money (as is alleged) *by way of settlement, or adjustment of such liability,* than the bank possibly could, or probably might, have recovered by suit, and therefore the plaintiffs are not entitled to recover.

" Answer.—The general rule of law is correctly stated in this point. But I do not consider that payment, under the circumstances detailed in this case, will debar the party from recovering if the jury is satisfied that the money was destroyed, and never can be presented to the bank for payment, and that before that

had occurred, or before it was known, the plaintiffs had paid the defendant the whole amount of the paper afterwards destroyed.

"4. That the testimony of O. B. Simmons (an admitted thief, by his own deposition), the confession of whose guilt was extracted from him by the promise that 'if he would tell the truth about it he would not be prosecuted,' is not sufficient, in point of law, to entitle the plaintiffs to recover in this case, unless his testimony is conclusively corroborated by other testimony given in the case, especially as the plaintiffs themselves have shown that the said Simmons was subject to periodical fits of insanity, had been in the Insane Asylum from June 1859 until April 1860, and from December 1860 to 27th April 1861, and had one of those spells in August 1860.

"Answer.—The circumstances mentioned in this point are such as tend to greatly weaken the evidence of Simmons, but it is a question for the jury to determine whether the witness is or is not entitled to credit, and also how far he is corroborated by the testimony of the other witnesses.

"5. The testimony given on trial establishes with sufficient certainty that when the package of bank notes was delivered to the plaintiffs at the city of Baltimore, it contained bank bills or notes to the amount of nine thousand four hundred and fifty-five dollars; also that when what purported to be the same package was delivered at the Hagerstown Bank, it contained but six thousand and ninety-five dollars, but the plaintiffs have utterly failed to establish, by the testimony of O. B. Simmons, or otherwise, that the precise amount of said deficiency of three thousand three hundred and sixty dollars, or any other definite and precise sum, was stolen from the said package by the said O. B. Simmons, and afterwards burned, or otherwise thoroughly destroyed by the said Simmons, or other person or persons; and therefore the plaintiffs are not entitled to recover in this suit the sum of three thousand three hundred and sixty dollars, the above deficit, nor any other sum less than that, upon the testimony given on trial.

"Answer.—We do not consider that there is any deficiency of proof in this case to debar the plaintiffs from recovering, although the person who took the paper from the bundle did not know the exact amount that he had abstracted, provided the jury believe that all that was extracted was destroyed except the forty-five dollars still in existence, and that all which was taken from the package was repaid to the Hagerstown Bank.

"6. That to entitle the plaintiffs to recover in this case, they are bound to prove as conclusively as if admitted by the pleadings, the *precise amount of the bank notes*, which it is alleged O. B. Simmons stole from the package of notes containing the sum of nine thousand four hundred and fifty-five dollars; also the

*denominations* and *dates*, or the *numbers* and other *designations* of said alleged stolen bank notes; and that the said stolen bank notes, thus designated and identified, were wholly burned, or otherwise destroyed, and, having failed to do so, they are not entitled to recover in this suit.

" Answer.—The jury must be clearly satisfied that the amount of notes for which they render their verdict was *destroyed.* This must be proved beyond all reasonable doubt; not as conclusively as if admitted in the pleadings, but satisfactorily, and beyond any reasonable doubt; but the dates, numbers, and denominations of the different notes need not be proved or identified.

" 7. That to entitle the plaintiffs to recover in this suit, it is incumbent upon them to prove conclusively, beyond all question or controversy, that the identical bank notes, alleged to have been stolen from the said package by O. B. Simmons, were actually burned, or otherwise wholly destroyed by the said Simmons, also the precise amount thus alleged to have been stolen, and burned, or destroyed, and that a mere preponderance of proof, which in ordinary cases would be sufficient to authorize a jury to find a fact in issue, is not to be here regarded as legally sufficient to entitle the plaintiffs to recover, under the pleadings, facts, and circumstances as they stand, or as they are developed in the testimony given on the trial.

" Answer.—It must be proved that the notes abstracted were destroyed. The destruction must be proved *beyond reasonable doubt,* and the jury cannot give a verdict for any more than was destroyed. But the precise sum abstracted need not be proved by the same witness who proves the destruction. If that is ascertained by other means to the satisfaction of the jury, and you are satisfied that all was destroyed except the forty-five dollars, the case is sufficiently made out so far as regards the law of the case.

" 8. That the plaintiffs (if otherwise entitled to recover) are not entitled to recover in this case, because no adequate security or indemnity can be provided or given to the bank by a bond of indemnity, or other instrument of writing, which will amply and fully indemnify the bank against any and all losses or damages, which the said bank can or may sustain by the liability of the bank to pay the said alleged stolen bank notes, on presentation at its counters to a *bonâ fide* holder, or in case of the payment by the bank of any of the alleged stolen bank notes, which may be presented to the said bank, and paid to such holder.

" Answer.—We do not consider the bond of indemnity of any moment, as it will not be possible for the bank to identify the stolen notes, so as to avail itself of the bond, unless by some other means than the face of the paper. But it was proper to give the bond to meet any possibility, and also to demand this

amount before bringing suit. But if this jury is satisfied that the notes are destroyed, they never can be presented, and therefore no loss can accrue, and if not destroyed the plaintiffs cannot recover. The case mainly turns on that fact, and is a question for the jury."

Under these instructions there was a verdict and judgment in favour of the plaintiffs for $3315. Whereupon the defendants sued out this writ, and assigned for error the admission of the testimony of Oliver B. Simmons, the portions of the charge of the court which is printed above in brackets, and the answers given by the court below to the defendant's second and subsequent points.

*John A. Fisher* and *James McCormick, Jr.,* for plaintiffs in error.

*J. C. Kunkel* and *R. A. Lamberton,* for defendants.

The opinion of the court was delivered, July 1st 1863, by

WOODWARD, J.—We agree with the learned counsel of the plaintiff in error, that the money in controversy was not recoverable as for money paid by mistake. There was no mistake of facts in the payment. The express company had undertaken to carry $9455 of money from Baltimore to the Hagerstown Bank. It was the bank's property, and the carrier was bound by law to deliver it to them. An agent or clerk of the express company stole $3360 from the package during its passage. It was the duty of the company to make good this sum to the bank. The bank could have recovered against them at law. When Colonel Bingham, therefore, on the 11th October, paid to the bank $3360 in settlement of the claim, he did only what the law would have compelled his company to do, and the bank received only what they were entitled in equity and good conscience to receive and retain. So far from being a payment in mistake of legal rights and duties, it was a payment in discharge of clearly ascertained legal rights and duties.

But the consequence of such settlement and payment was to transfer the property in the notes from the bank to the express company. The bank having received the value of the notes, had no further right to the notes themselves, and were bound to redeem them when presented, as they would redeem any other paper issued by them. Simmons, the company's agent, had the custody of the notes, but he had acquired no property in them, for he had taken them from his employers feloniously. He was bound in law and conscience to return them to his employers, in whom the title had now vested absolutely; and whilst he retained the custody, he must be considered as holding in trust for them.

Whatever of the notes he passed away was the company's loss, and whatever he destroyed enured to their benefit, for it entitled them to claim so much money from the bank as for destroyed notes of their issue.

It is argued, that a wanton destruction by their own agent could give the company no right of action. To this we cannot assent. Even if a careless and unintentional destruction of bank notes by an agent, in the course of his duties, would not give the principal an action against the bank that issued them, a proposition which we do not mean to affirm, it is very clear that a wanton destruction by a faithless agent, not in pursuit of the duties for which he was employed, but in gross violation of them, cannot be imputed to the company as their wrongful act. It was their duty to employ honest and faithful agents, and when in pursuit of their calling as common carriers, their agent failed to deliver all the money they undertook to deliver, they were, as I have before said, clearly responsible to the bank for his negligence and fraud. But when, by settlement with the bank, the company had become the owner of the notes in question, it was a fraud on *them*, not on the bank, to surreptitiously destroy the notes. It was like a malicious destruction of any other property of the employer by an unfaithful servant. What right has the bank to profit by his fraud on his employers? By what rule of law or of morals can they adopt his wrongful act and appropriate it to their benefit? Ordinarily an employer is not responsible to third parties for the wilful wrong of a servant, even in the course of his employment; but here was an act, the destruction of the notes, which was not in the course of the agent's duties, which was not injurious to the bank, for if not destroyed, the bank was more certainly liable to redeem the notes than if they were destroyed, but which was a great wrong to the employers, and to nobody else. Now, to treat the bank as the injured party, and the express company as the wrongdoer, would be an extremely artificial view of the case and a strange inversion of legal principles.

The real question in the case was whether there was adequate evidence of the destruction of the notes. Upon general principles of law, no man loses his right either to real or personal property, or to a chose in action, by losing the evidence of it, but if he cannot produce the primary evidence, he is bound to account for its absence and to produce secondary evidence that shall be reasonably satisfactory to a court and jury. As long as a bank note exists, the bank is liable to redeem it in the hands of the bearer, and therefore it is necessary for a party who calls on a bank to redeem notes without producing them, to prove something more than mere loss, because, though lost to the real owner, the bank remains liable to the finder. But if their destruction

[Hagerstown Bank v. Adams Express Co.]

can be shown, there is an end of the bank's liability to some casual holder, and the owner may recover them.  The cases are all cited in the argument, two of the best of which are Bullet v. The Bank of Pennsylvania, 2 Wash. C. C. R. 172, and Martin v. The Bank of U. S., 4 Id. 255, both of which were cases in which the owners of bank notes had cut them in twain, and lost one part and presented only the other part.  The banks were held liable as for destroyed notes.  In such cases the evidence is complete, for the part produced is sufficient to identify the note, and the mutilation and loss of half is the destruction of the whole for all legal purposes.  The case most relied on for the plaintiff in error, is that of Tower v. The Appleton Bank, decided in the Supreme Court of Massachusetts in 1862, and reported in 3 Allen 387.  "There was evidence  tending  to show that the plaintiff left the bills in question in his trunk in his room, in a house in Chicago, which was  burnt within an  hour afterwards, and that no person entered the room after he left it, and that the trunk and its contents were burnt with the house."  This is all the account the report gives us of the evidence, and the court held it insufficient to prove destruction of the bank notes.  The court intimated, that if " the bills were shown to be actually destroyed beyond all question or controversy," the bank would be liable, but such proof as was before them, they held insufficient.

And so it is maintained in this case, that there was a defect of proof on the main point.  On looking through it, we think the court could do no less than submit it to the jury, and we cannot conceive how it could have been submitted in a manner more clear and fair.  The precise amount of notes burned was not fixed, except inferentially, but the jury had ample grounds for the inference they made.

The witness, Simmons, was legally competent, notwithstanding his physical and moral infirmities, for he was called to testify against his interest.  His testimony was referred to the jury with all proper cautions and instructions, and we have no right to presume that any more weight was given to it than it deserved.

On the whole, we think the evidence of destruction was such as the court were bound to submit, and it having satisfied the jury, it must satisfy us.

It is said the *narr.* was not founded on a destruction of the notes, but this is a clear mistake.  The destruction and cancellation of the notes is alleged as a substantive ground of recovery.

The judgment is affirmed.